## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NEIL E. CLEMENT,

    *Plaintiff*,

*v.*                             CASE NO. 10-CV-14983

COMMISSIONER OF            DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). The matter is currently before this Court on cross-motions for summary judgment. (Docs. 13, 14, 15.)

Plaintiff was 55 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 26.) Plaintiff's employment history includes work as a software developer for nineteen years. (Tr. at 111.) Plaintiff filed the instant claim on April 22, 2008, alleging that he became unable to work on February 20, 2008. (Tr. at 91-95.) The claims were denied at the initial administrative stages. (Tr. at 51.) In denying Plaintiff's claim, the Commissioner considered disorders of back, discogenic and degenerative, as possible bases for disability. (*Id.*) On April 16, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Thomas J. Gaye, who considered the application for benefits *de novo*. (Tr. at 8-17.) In a decision dated August 10, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 17.) Plaintiff requested a review of this decision on August 19, 2009. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 4, 2010, when, after the review of additional exhibits[2] (Tr. at 220-25, 354-77), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On December 16, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

### B.   Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity since February 20, 2008, the alleged onset date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's cervical post laminectomy syndrome was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could perform his past relevant work as a software developer. (Tr. at 16.) Alternatively, at step five, the ALJ found that Plaintiff could perform a full range of sedentary work with a sit/stand option. (Tr. at 14-16.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17.)

### E.   Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in two motor vehicle accidents that resulted in neck injuries.

On March 5, 2003, an MRI of the cervical spine showed "normal post operative appearance without evidence of an active inflammatory process, canal stenosis or disc herniation." (Tr. at 226.) On March 10, 2003, a nerve conduction study was "normal." (Tr. at 249.) On March 19, 2003, Stephen C. Hyman, M.D., noted that Plaintiff's "strength has actually improved," and that although Plaintiff "continues to have significant radicular pain," Dr. Hyman was "not seeing definitive weakness." (Tr. at 240.)

Plaintiff underwent a left C6-7 cervical diskectomy on April 17, 2003. (Tr. at 265-66.)

On August 1, 2003, computed tomography of the cervical spine showed "[s]urgical screws identified at C6 and without evidence of osteolytic destruction, vertebral body subluxation or fracture." (Tr. at 227.) On September 12, 2003, x-rays of the cervical spine showed postoperative changes and degenerative changes, but no evidence of acute fracture or dislocation. (Tr. at 232.)

On September 24, 2003, Plaintiff underwent a left C6-7 foraminotomy, posterior cervical fusion and revision. (Tr. at 259.) After surgery, Peter Bono, D.O., noted that "no additional surgery is warranted" and he instructed Plaintiff to "seek a second surgical opinion to see if someone else can identify a problem that I am missing." (Tr. at 264.)

In February 2004, Dr. Hyman evaluated Plaintiff and recommended that Plaintiff continue his prescription regimen and be referred for accupuncture. (Tr. at 237.) In March 2004, Plaintiff was evaluated by Douglas W. Lee, M.D., who recommended a bone scan, continued medication, and accupuncture. (Tr. at 234.) In October 2004, Dr. Hyman again examined Plaintiff and found that his condition was "unchanged," that he had "good strength in the upper extremities," and that he was "neurologically intact." (Tr. at 238.)

On May 25, 2007, radiological reports showed"[n]o evidence of acute osseous injury involving the left hip." (Tr. at 269.)

Plaintiff was treated for pain by James E. Honet, M.D., of the Pain Care Associates, from February through September of 2008. (Tr. at 279-318.) Dr. Honet gave a sworn statement on March 5, 2009. (Tr. at 321-45.) In his statement, when asked what he believed was causing Plaintiff's pain, Dr. Honet stated:

> Specifically he's had damage to his muscles of his neck, the bones of his neck, the nerves in his neck. They have all been damaged either before or during surgery. Just by definition, when you do surgery, you can't help but damage tissues.

8

(Tr. at 327.) Dr. Honet explained that "just cutting through the skin, you damage the skin. You cut through the muscles, you damage the muscles. As you cut away bone, you damage the bone. When you put screws into the bone, you damage with those screws." (Tr. at 328.) However, Dr. Honet then stated that he was "not sure that the pain he is suffering from is because of Dr. Bono's surgery." (Tr. at 329.) Dr. Honet stated that one "can have damage to the pain nerves and still have intact motor nerves and sensory nerves and intact reflex nerves." (Tr. at 330.) Thus, Dr. Honet indicated that "you can touch his skin and he's going to feel you touch and it may or may not be painful, but that doesn't mean that there hasn't been damage to the nerve fibers, such that something that normally might cause a little bit of pain may cause pain way out of the norm, relative to you or I." (Tr. at 331.) When asked whether scar tissue could also cause pain, Dr. Honet responded, "Very likely." (Tr. at 332.)

Dr. Honet indicated that Plaintiff's pain has been treated with "epidural steroid injection," "clinical facet rhizotomy," "botox injections," "medications," "physical therapy," and "accupuncture." (Tr. at 331.) Dr. Honet indicated that Plaintiff's pain "will be a lifelong problem." (Tr. at 334.) When asked to describe the level of Plaintiff's pain, Dr. Honet responded, "I would say it's severe. If he doesn't take medication, he states the pain is as bad as he could possibly imagine it, and he only takes the pain medicine that we've prescribed. The pain is only able to get to a seven or eight out of ten, which is better than a ten out of ten, but not at a point where he can function and really doing anything of note." (Tr. at 334-35.) Dr. Honet found Plaintiff's symptoms credible and consistent with his findings and diagnoses. (Tr. at 335.)

When asked about Dr. Bono's statements indicating that Plaintiff's fusion was successful and that there was nothing more Dr. Bono could do for Plaintiff,  Dr. Honet responded that such statements do not mean that there is nothing wrong with Plaintiff's neck. (Tr. at 327.) According

to Dr. Honet, "[t]hat just means that [Dr. Bono] can't find anything at this day and age in 2009 that he can operate on to try and alleviate his pain." (*Id.*)

Dr. Honet concluded that Plaintiff is not capable of performing even sedentary work "[b]ecause of the pain that he has, the amount of medication that he takes to try and control the pain, [and] the physical exam that we have." (Tr. at 340.) When asked what side effects Plaintiff may experience from the medication, Dr. Honet stated "[h]e certainly can have some constipation, some nausea." (*Id.*) When asked whether the medication can affect cognition, memory, attention, and concentration to task, Dr. Honet responded, "Oh, absolutely . . . he can have concentration problems, constipation . . . nausea and vomiting because he's on these medications." (Tr. at 340-41.) When asked whether Plaintiff could sit or stand alternately for an eight-hour day, Dr. Honet responded, "No. He will have to absolutely lie down at times during any eight-hour period." (Tr. at 341.) When asked why that would be physiologically, Dr. Honet stated "[j]ust in terms of the pain that he experiences in his neck from moving his neck" because he "certainly needs a period where there's a break, and there's no weightbearing by his neck." (Tr. at 341-42.)

At the administrative hearing, the vocational expert ("VE") testified that Plaintiff's past work as a software developer was skilled work performed at the sedentary exertional level. (Tr. at 48.) When asked to consider a person with Plaintiff's background who also needed a sit/stand option, the VE responded that such a person could perform Plaintiff's past work as a software developer. (*Id.*) When Plaintiff's counsel asked if such a person could perform the work even though he needed to lie down for up to four hours during the eight-hour period, the VE responded that such a person would not be able to perform the past relevant work of software developer. (Tr. at 48-49.)

10

A medical interrogatory form was completed by Dr. Joseph E. Jensen on July 13, 2009, at the request of ALJ Thomas J. Gaye. (Tr. at 346.) After reviewing Plaintiff's records, but not examining Plaintiff, Dr. Jensen concluded that Plaintiff's impairments do not meet or equal a Listing. (Tr. at 352.) Dr. Jensen noted that Dr. Bono's findings one year after surgery were that Plaintiff had "nearly full neck motion, normal motor, sensory and reflex function - i.e., no radiculopathy . . . ." (Tr. at 352.) Dr. Jensen concluded that Plaintiff could occasionally lift or carry 20 pounds, frequently lift 10 pounds, occasionally use stairs or ramps, could not crawl or use ladders, could sit or stand/walk for six hours of an eight-hour workday, could frequently use upper extremities for light work, and could occasionally walk on uneven terrain and use pedals, but could only occasionally reach above his left shoulder. (Tr. at 353.)

### F.   Analysis and Conclusions

### 1.   Legal Standards

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the Dictionary of Occupational Titles ("DOT"). *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the

requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

As noted earlier, the ALJ determined in the alternative that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a full range of sedentary work with a sit/stand option. (Tr. at 14-16.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833;

*Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ failed to comply with controlling Sixth Circuit precedent in rejecting the opinion of Plaintiff's treating physician, Dr. James Honet, who opined that Plaintiff cannot perform even the minimal demands of sedentary work. (Doc. 13 at 11-16.) Plaintiff also contends that the ALJ's credibility findings as to Plaintiff are not supported by substantial evidence. (*Id.* at 16-22.) Finally, Plaintiff argues that the ALJ deprived Plaintiff of due process of law by not affording him the opportunity to cross-examine Dr. Jensen, a non-examining physician, who answered post-hearing interrogatories at the request of the ALJ. (*Id.* at 22-24.)

### a.    Treating Physician

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific

reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I note at the outset that Dr. Honet's conclusion that Plaintiff is totally disabled from any occupation and that he will never be able to resume any work (Tr. at 340) is not entitled to any deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Comm'r*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008).

14

I further suggest that the ALJ's decision to not give controlling weight to Dr. Honet's underlying opinions was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). Dr. Honet concluded that Plaintiff's allegations of disabling pain were supported simply because he underwent surgery, pointing out that "just cutting through the skin, you damage the skin. You cut through the muscles, you damage the muscles. As you cut away bone, you damage the bone. When you put screw into the bone, you damage with those screws." (Tr. at 328.) I suggest that a medical opinion equating all surgery with disabling damage and disabling pain borders on the implausible. Even Dr. Honet later questioned his own conclusion when he stated that he was "not sure that the pain he is suffering from is because of Dr. Bono's surgery." (Tr. at 329.) Following Plaintiff's post-surgical evaluation, Dr. Bono indicated that Plaintiff's fusion was successful and noted that "no additional surgery is warranted." (Tr. at 264.) In addition, Dr. Bono appeared perplexed by Plaintiff's continuing allegations of pain when he asked Plaintiff to "seek a second surgical opinion to see if someone else can identify a problem that I am missing." (*Id.*)

Dr. Honet's opinion that Plaintiff's allegations of disabling pain were supported also rested on the fact that Plaintiff's pain medication causes side effects , i.e., "some constipation, some nausea." (Tr. at 340.) When asked whether the medication can affect cognition, memory, attention, and concentration to task, Dr. Honet responded, "Oh, absolutely . . . he can have concentration problems, constipation . . . nausea and vomiting because he's on these medications." (Tr. at 340-41.) I suggest, however, that some constipation and nausea would not be disabling and that Dr. Honet provides no medical basis at all for his addition of "concentration problems" to the previously provided list of potential side effects.

I further suggest that Dr. Honet's opinions were inconsistent with the other substantial evidence in the case record. Although Plaintiff underwent cervical spine surgeries, tests showed normal postoperative appearance without evidence of an active inflammatory process, canal stenosis or disc herniation or subluxation. (Tr. at 226, 227, 232, 259, 265-66.) After surgery, Plaintiff had "good strength in the upper extremities,"and was "neurologically intact." (Tr. at 238, 249.) I therefore suggest that substantial evidence supports the ALJ's decision not to give Dr. Honet's opinion controlling weight.

### b.   Plaintiff's Credibility

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight

and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding his level of pain was not fully credible. As noted above, the objective medical evidence shows that although Plaintiff underwent cervical spine surgeries, tests showed normal post operative appearance without evidence of an active inflammatory process, canal stenosis, disc herniation or subluxation. (Tr. at 226, 227, 232, 259, 265-66.) In addition, examinations showed that Plaintiff had "good strength in the upper extremities" and was "neurologically intact." (Tr. at 238, 249.) Even Plaintiff's surgeon had difficulty understanding why Plaintiff alleged continuing pain and directed Plaintiff to "seek a second surgical opinion to see if someone else can identify a problem that I am missing." (Tr. at 264.) Finally, the ALJ noted that Plaintiff is able to care for himself independently and that he did not appear to show any overt pain behavior at the administrative hearing.

### c.    Allegations of Due Process Violations

Plaintiff argues that the ALJ deprived him of due process of law by not affording him the opportunity to cross-examine Dr. Jensen, a non-examining physician who answered post-hearing interrogatories at the request of the ALJ. (Doc. 13 at 22-24.)

Due process principles apply to social security proceedings. *Perales v. Richardson*, 402 U.S. 389, 401-02, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The Commissioner's procedural manual,

referred to as "HALLEX,"[3] describes the process that is due. *Adams v. Massanari*, 55 Fed. App'x 279 (6th Cir. 2003). Plaintiff notes that the ALJ did not provide Plaintiff with the responses given by Dr. Jensen to the post-hearing interrogatories and therefore Plaintiff was not provided with an opportunity to submit further evidence, propose additional interrogatories or request a supplemental hearing to cross-examine Dr. Jensen, as required by HALLEX. (Doc. 13 at 23.)

HALLEX provides that the plaintiff must be provided with the responses unless the plaintiff has waived the right to examine the evidence. *Id.* Waiver of the right to cross-examine must be "clearly expressed or strongly implied from the circumstances." *Lonzallo v. Weinberger*, 534 F.2d 712, 714 (7th Cir. 1976); *accord, Wallace v. Bowen*, 826 F.2d 187, 192 (3d Cir. 1989).

Plaintiff's counsel contends that although he agreed to the ALJ's "sending of post-hearing interrogatories to an orthopedist to determine whether [Plaintiff's] condition met or equaled a listed impairment . . . [he] made it clear that he may want to ask questions of the orthopedist once the interrogatories were received back." (Doc. 13 at 22.) I suggest that the transcript of the hearing reveals otherwise. The exchange between the ALJ and Plaintiff's counsel went as follows:

ATTY:      What interrogatories are we talking about?

ALJ:       The usual interrogatories.  Does he meet or equal a listing and what are the limits?  I mean there's nothing – from an arthropod [sic]?

ATTY:      If, if you wanted to do that I have no objection to it.

                          * * *

ALJ:       All right.  Let's see since we haven't had the CE we'll send it all off for an orthopedic interrogatory. Let me say this to you, Counsel, I got a note that we want to speed this case along, he might lose his house. It would be a wonderful thing if you could agree right now to the interrogatories, you know the dance. I mean we always, they go back to you. Nothing exotic, I'll send the record to an arthropod [sic], does

_____

[3]Hearing Appeals and Litigation Law Manual, H-A-L-L-E-X, 1-2-7-30(B), 1993 WL 643048 (S.S.A. 1993).

he meet listing, equal a listing and if not what are your views on the limitations. Is that agreeable to you?

ATTY:     I have no objections to that.

ALJ:      We could skip that intermediate step because that will just slow it down.

ATTY:     I have no objection to that.

ALJ:      All right.  Let's do that.  Last but not least let's get over to the VE. For the past -

ATTY:     Although I might, again I might have some questions that I'd like to ask him as well.

ALJ:      Well, that's the part I meant about slowing it down. If you want to do that then I don't see much point – he's in a hurry, your client. I, I mean I thought this would be where you'd go. All right, let's forget it then. We'll go to the VE.

                              * * *

ALJ:      Okay. I'll make a decision, it'll come to you in writing in a couple of months. Good luck, take care.

ATTY:     Well, again, Your Honor, if you want to do the interrogatories –

ALJ:      I'm just trying to speed that along.

ATTY:     Okay.  At this time –

ALJ:      It's like –

ATTY:     – at this time –

ALJ:      – it's for his benefit.

ATTY:     – at this time I would waive my right to, you know, to ask questions to it at this time.

ALJ:      All right. Why don't we get an orthopedic evaluation and we'll say, maybe he'll equal a listing and then we'll all be home free.  All right.

ATTY:     Okay.

ALJ:            Okay, good. Thanks.

(Tr. at 47-49.) The ALJ made it clear throughout the exchange that the intermediary step, or the part that would slow the process down, was Plaintiff's counsel asking questions or cross-examining the orthopedic specialist to whom the interrogatories would be sent. The ALJ explained that if counsel wanted to ask questions, the process would be slowed and there would be no point in doing that in light of Plaintiff's desire to expedite matters. The ALJ then concluded that interrogatories would not be sent and that he would decide the matter without them, but it was Plaintiff's counsel who brought the topic back up and asked the ALJ to go ahead and send the interrogatories. Counsel then stated, "at this time I would waive my right to, you know, to ask questions to it at this time." (Tr. at 49.) Significantly, Plaintiff's counsel expressly used the legal term of art "waive" with respect to the right to ask questions or cross-examine. The only potential ambiguity in counsel's phrasing is the addition of the phrase "at this time." I suggest that the only plausible meaning of the phrase is that counsel, after thinking it over and discussing it with the ALJ earlier in the hearing, was now ready to commit to the waiver. The potential alternative reading, namely, that the phrase expressed a desire to reserve the ability to cross-examine the orthopedist later would, I suggest, be nonsensical, since there would be no later hearing time or date in which to assert the right. I therefore suggest that Plaintiff's counsel's waiver was clearly expressed or, at the very least, strongly implied from the circumstances.

Even if the alternative reading controlled, and Plaintiff's counsel was expressing a hesitance to waive the right to cross-examine the affiant, counsel took no steps to reassert the previously waived right to cross-examine by any other method, such as a written letter or motion to the ALJ indicating that although he had waived the right at the hearing, he had changed his mind and wished to exercise the right.  I therefore further suggest that counsel's inaction in spite of his knowledge

20

from the hearing that the interrogatories would be sent, creates a strong implication that counsel continued to waive his right to cross-examine the orthopedist.  Accordingly, I suggest that Plaintiff's counsel waived the right to cross-examine or otherwise challenge the post-hearing interrogatories.

Even if Plaintiff had not waived the right to examine the responses to the post-hearing interrogatories and cross-examine Dr. Jensen, I suggest that the result would be the same. "Because of the nonadversary nature of social security adjudications, the need to cross-examine every reporting physician is less crucial to the fairness and accuracy of the administrative law judge's decision than it would be in an adversarial context." *Flatford v. Chater*, 93 F.3d 1296, 1306 (6th Cir. 1996). Accordingly, the Sixth Circuit joined a minority of circuits in holding "that an absolute right to cross-examination is not required in the social security disability benefits cases for the development of a complete record." *Id.* at 1307. The Sixth Circuit then considered "whether  the administrative law judge abused his discretion in this case." *Id.*; *accord, Passmore v. Astrue,* 533 F.3d 658, 665-66 (8th Cir. 2008) (in circuits holding that due process does not afford social security claimants an absolute right to cross-examination, courts must analyze whether the ALJ abused his discretion in denying cross-examination).

In *Flatford*, the ALJ submitted interrogatories to a physician after the administrative hearing, and after they were submitted as evidence, the plaintiff's counsel sought to subpoena and cross-examine the physician. Although the ALJ agreed to submit further interrogatories, he denied the plaintiff's request to subpoena the physician. The court considered one factor to weigh in favor of the plaintiff: the fact that the ALJ asked for the post-hearing evidence. However, the court found other factors weighed against the plaintiff and in favor of the ALJ:  (1) Plaintiff's attorney had been successful in gathering information from the physician from whom the post-hearing evidence was

sought, and (2) "the bulk of the record does not show that the administrative law judge abandoned his role as an impartial decisionmaker or failed in his duty to aid the claimant in a full development of the record." *Flatford*, 93 F.3d at 1306. Therefore, the court held that, "absent a showing of bias, we do not believe that the administrative law judge's decision to deny a subpoena to [Plaintiff] was an abuse of his discretion." *Id.*

In the instant case, the VE testified that Plaintiff's past work as a software developer was skilled work performed at the sedentary exertional level. (Tr. at  48.) When asked to consider a person with Plaintiff's background who also needed a sit/stand option, the VE responded that such a person could perform Plaintiff's past work as a software developer. (*Id.*) Therefore, the basis for the ALJ's conclusion that Plaintiff could perform his past work came without reference to the orthopedist's answers to the interrogatories. Even the ALJ's alternative finding – that Plaintiff retained the residual functional capacity to perform a full range of sedentary work with a sit/stand option –  was based largely on the testimony given by the VE. The ALJ expressly stated that he "finds this opinion [of Dr. Jensen, orthopedist] not to be supported by the evidence of record and gives it little weight." (Tr. at 16.) Therefore, it appears that the responses to the interrogatories had very little, if any, affect on the ALJ's findings.

In addition, the ALJ could have reasonably believed, even if the court holds otherwise, that Plaintiff's counsel had waived the right to cross-examine the orthopedist. Plaintiff's counsel, who was made aware at the hearing that the ALJ was going to send interrogatories to an orthopedist, did nothing to assert any desire to cross-examine or otherwise challenge the responses to the interrogatories until this appeal of the Commissioner's decision. Finally, "the bulk of the record does not show that the administrative law judge abandoned his role as an impartial decisionmaker or failed in his duty to aid the claimant in a full development of the record." *Flatford*, 93 F.3d at

1306. I therefore suggest that, under these circumstances, the ALJ did not abuse his discretion in seeking and utilizing the orthopedist's answers to the post-hearing interrogatories.

**3.    Conclusion**

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER

Dated: July 7, 2011                United States Magistrate Judge

<u>**CERTIFICATION**</u>

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  July 7, 2011         By____s/Patricia T. Morris_____

Law Clerk to Magistrate Judge Binder

24